IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEX CHADWELL<br>1819 Landmark Drive,<br>Richmond, Texas, 77406<br>       **Plaintiff**<br>v.<br><br>THE OFFICE OF<br>REPRESENTATIVE TROY NEHLS,<br>U.S. HOUSE OF<br>REPRESENTATIVES,<br>1104 Longworth House Office Building<br>Washington, DC  20515<br><br>       **Defendant.** | Civil Action No.<br><br><br><br>JURY DEMAND INCLUDED |

**COMPLAINT (JURY TRIAL DEMANDED)**

Plaintiff, Alex Chadwell, by and through his undersigned counsel, hereby brings this action against Defendant, The Office Of Representative Troy Nehls, of the United States House of Representatives, pursuant to the Congressional Accountability Act of 1995, as amended, 2 U.S.C. §§ 1301, *et seq*.

Defendant discriminated against Plaintiff, by creating and maintaining a hostile work environment against Plaintiff, because he is gay.  The Representative, his Chief of Staff and his Special Advisor all regularly made offensive comments about gay people, directed toward Plaintiff. Additionally, after Rep. Nehls confirmed that Plaintiff was gay, Plaintiff had important duties removed and given to other employees.  Considered as a whole, the hostile environment was sufficiently severe and/or pervasive to change the terms and conditions of Plaintiff's employment and it resulted in a constructive termination.

1

## JURISDICTION, VENUE AND PARTIES

1. This Claim arises out of a hostile work environment based on sex (sexual orientation) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (Title VII), made applicable to the U.S. House of Representatives (House) by the CAA, 2 U.S.C. §§ 1302(a), 1311(a). *See* 2 U.S.C. § 1311(a)(1).

2. Mr. Chadwell, a gay male, is the Plaintiff in this action. Mr. Chadwell was formerly employed by the Defendant in the District of Columbia, as well as in the Defendant's former District office, in Richmond, Texas, and the current District Office, in Fulshear, Texas.

3. The Defendant maintains its principal office at 1104 Longworth House Office Building, Washington, D.C, 20515. The Defendant also currently maintains a district office in Fulshear, Texas.

4. Mr. Chadwell is a former employee of the U.S. House of Representatives. As such, Mr. Chadwell is a "covered employee" within the meaning of Sections 101(a)(3)(A) and 101(a)(4) of the CAA (2 U.S.C. §§ 1301(a)(3)(A), 1301(a)(4)) and is authorized to obtain relief for claims brought under the CAA.

5. The Defendant is the personal office of Rep. Troy Nehls, a Member of the House of Representatives. As such, the Defendant is an "employing office" within the meaning of Section 101(a)(9)(A) of the CAA, 2 U.S.C. § 1301(a)(9)(A).

6. Mr. Chadwell timely initiated his claim – pursuant to 2 U.S.C. § 1402(d), by filing an administrative complaint with the Office of Congressional Workplace Rights on April 10, 2024. The administrative complaint was timely because it was within the 180-day period that began on October 13, 2023 – the date of the last act contributing to the hostile work environment alleged in this action.

7. This civil action is being filed within the deadline for filing a civil action, as defined by 2 U.S.C. § 1401(b)(3). The deadline for filing a lawsuit is 70 days after the date that Plaintiff filed his OCWR complaint, but that deadline was tolled (pursuant to 2 U.S.C. § 1403(c)), for the 60-day mediation period (which extended from May 22, 2024 to July 22, 2024). As such, Mr. Chadwell has met all applicable deadlines for filing this action pursuant to Section 402(d) of the CAA, 2 U.S.C. § 1402(d).

8. Venue is proper in the District of Columbia because the discriminatory conduct and hostile environment toward Plaintiff commenced in Washington, D.C., Representative Nehls and his Chief of Staff, Robert Schroeder, both worked primarily from the Washington D.C. Office, and the employment decisions pertaining to Plaintiff and his duties and tenure were made in Washington, D.C.

**FACTUAL BACKGROUND**

9. Before Representative Nehls came to know or suspect that Plaintiff is gay, Plaintiff and his family were friends with Representative Nehls and his family.

10. Plaintiff worked for Representative Nehls' campaign to be elected to the house in December 2019, and he continued on the campaign through December 2020.

11. When Rep. Nehls won his election, in November 2020, he promised Plaintiff a position in his Washington, D.C. office.

12. Plaintiff began his employment with the Defendant, in January 2021, as a Legislative Correspondent in the Washington D.C. Office.

13. The Defendant employed Plaintiff in various roles, from January 2021 through October 13, 2023.

14. Defendant's Chief of Staff was Robert Schroeder. Mr. Schroeder worked

primarily in the Washington D.C. Office, and he was Plaintiff's direct supervisor during the time that Plaintiff was a Legislative Correspondent.

15. Upon information and belief, Chief of Staff Schroeder knew or suspected that Plaintiff was gay early in his tenure with the Office, and Schroeder regularly made anti-gay comments directly to Plaintiff.

16. Among other things, Mr. Schroeder regularly made comments that "gays go to hell," and that it was "Adam and Eve, not Adam and Steve." Schroeder regularly made other offensive comments and jokes about gay people, and he often remarked that he thought that men who were not "manly" or "masculine" had an inclination toward homosexuality.

17. On one occasion, Mr. Schroeder referenced allegations about another congressman having sex with another man and he told Plaintiff, "I don't mess with that at all—I don't like that lifestyle."

18. Referring to homosexuality as a "lifestyle" is deeply hurtful to gay people because it indicates that being homosexual is somehow a choice that people make, and it also implies that there is some identifiable "lifestyle" that gay people share, typically falsely characterized by hyper-sexual and promiscuous conduct.

19. In the spring of 2021, Chief of Staff Schroeder told Plaintiff not to engage with gay constituents and that he would never support legislation that supported or promoted any causes that were pro-LGBTQ+.  This was consistent with Schroeder's practice of also making negative comments about Muslim and Indian-American constituents.

20. During Plaintiff's tenure as a Legislative Correspondent in the D.C. Office, Schroeder withheld training for Plaintiff on IndiGov, the constituent relationship software that was used as the backbone of a Legislative Correspondent's work.  The training was denied

because Mr. Schroeder suspected Plaintiff of being gay.

21. Because of direct anti-gay hostility from Mr. Schroeder, Plaintiff asked to be transferred to the District Office, which was in Richmond, Texas at the time, to be a Field Representative.

22. In the process of transferring Plaintiff to the Richmond, Texas District Office, Chief of Staff Schroeder told the Deputy District Director, Mary Davis, that Plaintiff did not "fit in" at the D.C. Office and was "too sensitive," which was a reference to Plaintiff's sexuality.

23. If not for the discrimination by Mr. Schroeder, Plaintiff would have remained as a Legislative Correspondent in the Washington D.C. Office.

24. Plaintiff transitioned to the role of Field Representative, in the Richmond, Texas Office, in May 2021.

25. As a Field Representative, Plaintiff reported to then-Deputy District Director Mary Davis (Ms. Davis) from May 2021, through November 18, 2022, to then-District Director Barbara Spruill from November 19, 2022, through March 2023, and to District Director Evan Bender beginning in April 2023.

26. Throughout Mr. Chadwell's employment as a Field Representative, Mr. Schroeder was supposed to be his second-level supervisor; however, Mr. Chadwell was often required to report directly to Mr. Schroeder.

27. Throughout Mr. Chadwell's employment as a Field Representative in the Richmond and Fulshear District offices, Thomas Goodfellow – a friend and confidante of Rep. Nehls – served as the Office's Special Advisor. In that role, Mr. Goodfellow was treated as a supervisory level employee.

28. The hostile work environment against Plaintiff continued while Plaintiff was

5

employed as a Field Representative in the Richmond and Fulshear Texas offices.

29. Representative Nehls and Chief of Staff Schroeder regularly questioned why – if he was a "normal man" – Plaintiff was not romantically interested in Representative Nehls' daughter.

30. On one occasion, Representative Nehls became upset when he saw that another Office employee was watching the television show "Queer Eye." In response, Representative Nehls stated, in front of Mr. Chadwell, that the Office did not support gay people.

31. Thomas Goodfellow kept a LGBTQ+ poster on his Office wall solely for the purpose of mocking the gay community. Throughout Mr. Chadwell's tenure in the Office, Mr. Goodfellow mocked the poster on a regular basis in front of Mr. Chadwell, occasionally in the presence of Chief of Staff Schroeder.  For example, Mr. Goodfellow regularly pointed at the poster and stated, "We don't need to let gays into military," "What is the world coming to?" and/or "We don't need to support the queers."

32. In January 2022, Mr. Chadwell notified Chief of Staff Schroeder that he had contracted COVID-19. In response, during a phone conference that Mr. Schroeder took from Washington, D.C., Schroeder commented that Plaintiff must get COVID so much because he was "kissing a lot of boys."

33. In March 2022, an openly gay city council member asked for Rep. Nehls' endorsement.  Nehls commented that he would ultimately have to deal with gay people if he wanted to be re-elected, but he decided not to endorse the councilmember candidate because he was gay.

34. In August of 2022, Representative Nehls asked Daniel Gribble to find out whether Plaintiff was gay.  After making inquiries, including asking then Deputy District Director Mary

Davis, Gribble reported back that he believed that Plaintiff was indeed gay, and that Ms. Davis was covering up for Mr. Chadwell and concealing his sexual orientation.

35. After the conversation between Mr. Gribble and Representative Nehls, Nehls' behavior towards Mr. Chadwell changed dramatically for the worse.  Representative Nehls began to ostracize Mr. Chadwell at that point, with hostile treatment that continued through Mr. Chadwell's last day in the Office.

36. Beginning in the fall of 2022, Representative Nehls stopped reaching out to Mr. Chadwell about Office matters or general matters as he had previously and routinely done. In addition, he frequently ignored Mr. Chadwell's attempts at outreach.

37. Representative Nehls and his wife also ceased interacting with Mr. Chadwell and his family during social gatherings.

38. In continuing the Office's hostility, Mr. Schroeder denied Mr. Chadwell the opportunity to attend trainings and events that heterosexual employees attended.  This was a departure from earlier in Mr. Chadwell's tenure when the Office allowed him to attend trainings and events.

39. Further, the Defendant cut Mr. Chadwell off from carrying out many of his regular job duties. For example, Representative Nehls and Mr. Schroeder restricted Mr. Chadwell from driving and accompanying Representative Nehls on trips and functions within the District, duties Plaintiff had regularly performed prior to the Fall of 2022.

40. By January 2023, the Office had hired a new Field Representative, William Chappell, a heterosexual male, while Mr. Chadwell was still employed with the Office.  Mr. Schroeder asked Mr. Chadwell to train Mr. Chappell, who, unbeknownst to Mr. Chadwell, would soon take over many of his duties.

41. The Office began to send Mr. Chappell to attend events and trainings instead of Plaintiff – including a July 2023 Case Work Field Representative conference and training event in Washington, D.C. Mr. Chappell was also assigned to accompany Representative Nehls to events in the Congressional District, to the exclusion of Mr. Chadwell.

42. In March 2023, when the position of District Director became available, Chief of Staff Schroeder and Representative Nehls decided not to offer the position to Plaintiff, because he is gay – despite the fact that Plaintiff was the most qualified employee for the position at that time. Instead, Schroeder and Nehls moved Evan Bender (who was working in the District of Columbia office as a Legislative Director) to take the position. That decision was made while both Schroeder and Nehls were in the District of Columbia. Plaintiff had to train Mr. Bender on all aspects of the District Director position.

43. Mr. Schroeder soon began telling Plaintiff he had no future or growth potential with the Office and should explore other opportunities. Schroeder did this because Plaintiff is gay, and Schroeder did not want him working for Rep. Nehls.

44. In or around September 2023, Mr. Schroeder strongly urged Mr. Chadwell to take a job with Big Brothers Big Sisters ("BBBS").

45. While Mr. Chadwell had concerns about working for BBBS, Mr. Schroeder was adamant that Mr. Chadwell take the BBBS job, informing him that he had no future in the office.

46. Mr. Chadwell stated that he had concerns about taking the BBBS job, as it would result in a significant pay cut, and Mr. Chadwell had financial obligations in line with his current salary.

47. In response, Mr. Schroeder let Plaintiff know that his future at the office was limited and that he needed to take the BBBS job, even if he suffered a pay cut.

48. Mr. Schroeder thereupon called Mr. Chadwell daily to pressure him to accept the BBBS job.

49. As a result of the Office's creation of an intolerable hostile working environment, including Mr. Schroeder's threats and extreme pressure on Mr. Chadwell to accept the BBBS job, Mr. Chadwell agreed to resign and advised the Office of the same in or around the beginning of October 2023.

50. Creating a hostile work environment to drive unwanted employees to resign was typical practice for Mr. Schroeder. As another example, in the winter and early spring of 2023, Schroeder wanted to force former District Director Barbara Spruill out of her position, because he thought she was "too told." Schroeder told others in the office that he was going to overload Ms. Spruill with work because he thought it would force her to resign.

51. During Mr. Chadwell's final two weeks with the Office, through October 13, Mr. Schroeder cut off Mr. Chadwell's access to his work computer and laptop.

52. On October 13, 2023, Mr. Chadwell's last day in the Office, Mr. Schroeder called Mr. Chadwell from his (Mr. Schroeder's) office in D.C. and stated that Plaintiff's departure was due to the fact that their "lifestyles" did not align.

53. Mr. Schroeder's assertion that Mr. Chadwell's "lifestyle" – a reference to Mr. Chadwell being gay – made him incompatible for the job was extremely offensive, and it brought him back to the moment, early on in his tenure at the Office, when Mr. Schroeder initially framed being gay as a "lifestyle," and one that he did not agree with.

54. Mr. Chadwell was deeply offended and disturbed that, up until his last day in the Office, the Office continued to isolate, ostracize and harass him because of his sexual orientation.

55. The Defendant's conduct – by and through Representative Nehls, Chief of Staff

Schroeder and Special Advisor Goodfellow and as described above – was sufficiently severe and/or pervasive that it created a hostile work environment that adversely impacted the terms and conditions of Plaintiff's employment with the Office and forced him out of his position.

## COUNT I

### Hostile Work Environment Based on Sex (Sexual Orientation)

56. Mr. Chadwell incorporates by reference the foregoing allegations set forth in as if fully restated herein.

57. Mr. Chadwell is a gay male and a former employee of the House. He is a member of multiple protected classes under Title VII, including sex. *See* 42 U.S.C. § 2000e-2(a)(1).

58. The Office, through Representative Nehls, Chief of Staff Robert Schroeder, and Special Advisor Thomas Goodfellow, subjected Mr. Chadwell to unwelcome, severe and/or pervasive harassment.

59. The harassment included: repeated slurs against gay individuals, including that Mr. Chadwell was not suitable to work in the office because he is gay; the Office's removal of duties and assignments from Mr. Chadwell's portfolio, and transfer of those duties to a heterosexual staffer who the Office required Mr. Chadwell to train; and the intolerable pressure that the Office placed on Mr. Chadwell to depart from the Office.

60. The harassment to which the Office subjected Mr. Chadwell occurred because of his sex (sexual orientation).

61. The harassment to which the Office subjected Mr. Chadwell was severe and/or pervasive to a degree which affected the terms, conditions, and privileges of the employment.

62. The harassment to which the Office subjected Mr. Chadwell had the purpose and effect of unreasonably interfering with and/or creating an intimidating, hostile, and offensive

work environment.

63. The Office knew or should have known of the harassment because Mr. Chadwell's supervisors observed and/or were directly involved in the harassing conduct. However, the Office nonetheless failed to take steps to prevent it.

64. As a direct and proximate result of the unlawful actions committed by the Office as described herein, Mr. Chadwell had no choice but to resign from his position.

65. As a direct and proximate result of the unlawful actions committed by the Office as described herein, Plaintiff suffered and will continue to suffer damages and injuries, including, but not limited to, past and future lost wages, lost benefits of employment, other special and/or incidental damages and prejudgment interest, all in an amount to be proven at trial.

66. As further direct and proximate result of the unlawful actions committed by the Office as described herein, Mr. Chadwell has suffered and continues to suffer emotional distress, including, but not limited to, humiliation, mental anguish, and loss of enjoyment of life, all in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiff whole by paying Plaintiff any monetary damages proved at trial in addition to compensatory damages in an amount to be determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to

evaluate such compliance; (v) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vi) grant such other and further relief to the Plaintiffs as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Respectfully Submitted,
        ALDERMAN, DEVORSETZ & HORA, PLLC

        Leslie D. Alderman III (D.C. # 477750)
        1025 Connecticut Ave., NW
        Suite 615
        Washington, DC 20036
        Tel: 202-969-8220
        Fax: 202-969-8224
        lalderman@adhlawfirm.com

        Attorney for the Plaintiff