## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALEX CHADWELL** | ) | **Civil Action 1:24-CV-02392-TNM** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE OFFICE OF REP. TROY NEHLS,** | ) | |
| **U.S. HOUSE OF REPRESENTATIVES** | ) | |
| | ) | |
| **Defendant** | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER

# TABLE OF CONTENTS

I.    INTRODUCTION AND FACTS ..................................................................................... 1

II.   APPLICABLE LAW AND STANDARD ........................................................................ 3

III.  ANALYSIS ....................................................................................................................... 5

  1.   The Private Interest Considerations Favor Keeping this Case in Washington ................. 5

    a.   Plaintiff's Choice of Venue is Entitled to Deference ....................................... 5

    b.   The Defendant's Choice Of Forum is Entitled to No Deference ................................... 8

    c.   The Claim Arose in the District of Columbia ................................................ 10

    d.   The Convenience of the Parties ..................................................................... 15

    e.   The Convenience of Essential Witnesses ........................................................ 17

    f.   The Private Interest Factors Support Keeping this Case in Washington. ..................... 20

  2.   The Public Interest Factors Favor Keeping this Case in Washington .............................. 20

    a.   The Transferee Forum's Familiarity with the Governing Laws ................................... 20

    b.   The Relative Congestion Of The Calendars Of The Courts ......................................... 21

    c.   The Local Interest In Having Local Controversies Decided At Home ........................ 21

    d.   The Likelihood Of Forum Shopping ............................................................ 23

    e.   The Public Interest Factors Are in Plaintiff's Favor ...................................... 23

IV.   CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Aishat v. United States Dep't of Homeland Sec.*, 288 F. Supp. 3d 261 (D.D.C. 2018) .................. 7

*Archuleta v. Sullivan*, 725 F. Supp. 602 (D.D.C. 1989) ................... 9

*\*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013) ..................... 5, 10, 24

*\*Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1 (D.D.C. 2004) ....................... 10

*Claros v. Cowan*, Civ. No. 21-609, 2021 U.S. Dist. LEXIS 86678 (D.D.C. May 6, 2021)...... 7, 15

*Ctr. For Env't Sci. v. NPS*, 75 F. Supp. 3d 353  (D.D.C. 2014)...................... 4

*DealTime.com Ltd. v. McNulty*, 123 F. Supp.2d 750 (S.D.N.Y. 2000)......................... 19

*Estate of Rick v. Stevens*, 145 F. Supp.2d 1026 (N.D. Iowa 2001) ............... 19

*\*Foote v. Chu*, 858 F. Supp. 2d 116 (D.D.C. 2012)................. 18, 19

*Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149 (D.D.C. 2008) ............... 10

*\*Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001....................... 19, 23

*Gross v. Owen*, 221 F.2d 94 (D.C. Cir. 1955) ................ 8

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ............ 8

*\*Helmer v. Doletskaya*, 393 F.3d 201 (D.C. Cir. 2004).................... 12, 13, 14

*Jimenez v. R&D Masonry, Inc.*, 2015 U.S. Dist. LEXIS 156850, 2015 WL 7428533 (D.D.C. Nov. 20, 2015) ................ 7, 21

*Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3 (D.D.C. 1996) ................ 23

*Lamont v. Haig*, 590 F.2d 1124 (D.C. Cir. 1978)........................ 9

*Lewis v. Nat'l Football League,* 813 F. Supp. 1 (D.D.C. 1992).................... 20

*M Airport Working Grp. of Orange Cty. v. United States Dod*, 226 F. Supp. 2d 227 (D.D.C. 2002)
.................................................................................................................................. 14

*Mahoney v. Eli Lilly & Co*., 545 F. Supp. 2d 123 (D.D.C. 2008) .................................................. 8

*\*Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990) ........................................................ 12

*\*Margoles v. Johns*, 483 F.2d 1212 (D.C. Cir. 1973) ....................................... 11, 13, 14

*Martens v. Carlos Del Toro, Sec'y of the Navy*, No. 1:22-cv-992 (TNM), 2022 U.S. Dist. LEXIS
190218  (D.D.C. Oct. 18, 2022),.............................................................................. 3

*\*McClamrock v. Eli Lilly & Co.* 267 F.2d 33 (D.D.C. 2003) .......................................... 16, 17, 18

*Montgomery v. Barr*, 502 F. Supp. 3d 165  (D.D.C. 2020)............................................................ 3

*Nat'l Parks Conservation Ass'n v. Zinke*, 2018 U.S. Dist. LEXIS 233814 (D.D.C. July 25, 2018).
.................................................................................................................................. 4

*NFR, LLC v. Corizon Health, Inc.,* 2015 U.S. Dist. LEXIS 108116 (E.D. Va. Aug. 17, 2015).... 18

*Ngonga v. Sessions*, 318 F. Supp. 3d 270 (D.D.C. 2018)................................................................ 7

*Pain v. United Technologies Corp.* 637 F.2d 775 (D.C. Cir. 1980)). ............................................. 4

*Payne v. Giant of Md., L.L.C.*, 2006 U.S. Dist. LEXIS 44004 (D.D.C. June 28, 2006).............. 22

*Pope v. Office of Congressman Lamborn*, 2021 U.S. Dist. LEXIS 175005 (D.D.C. Sep. 15, 2021)
.................................................................................................................................. 14, 22

*\*Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs,* 893 F. Supp. 2d 49 (D.D.C. 2012).... 21

*Quezada v. Darden Restaurants, Inc.*, 139 F. Supp.2d 666 (W.D. Pa. 2001) ............................... 19

*Rossville Convenience & Gas, Inc. v. Barr*, 453 F. Supp. 3d 380 (D.D.C. 2020) ......................... 9

*Samsung Elecs. Co. v. Rambus Inc.,* 386 F. Supp. 2d 708 (E.D. Va. 2005).................................. 18

*\*Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. Pshp.*, 24 F. Supp. 2d 66 (D.D.C.
1998) ....................................................................................................... 4, 24

*Shawnee Tribe v. United States*, 298 F. Supp. 2d 21 (D.D.C. 2002)............................................. 15

*Sheraton Operating Corp. v. Just Corp. Travel*, 984 F. Supp. 22 (D.D.C. 1997).......................... 4

*SoundExchange, Inc. v. Music Choice,* 2020 U.S. Dist. LEXIS 25922(D.D.C. Feb. 14, 2020)... 19

*Spotts v. United States*, 562 F. Supp. 2d 46 (D.D.C. 2008)............................................................. 6

*Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22 (1988) ................................................................... 5

*\*Tavoulareas v. Comnas*, 720 F.2d 192 (D.C. Cir. 1983) ....................................................... 11, 13

*\*Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res.*, 196 F. Supp. 2d 21 (D.D.C. 2002) .. 18, 19

*\*Treppel v. Reason*, 793 F. Supp. 2d 429 (D.D.C. 2011) ............................................................. 10

*Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13 (D.D.C. 1996) ....................... 6

*\*United States ex rel. Westrick v. Second Chance Body Armor, Inc.,* 771 F. Supp. 2d 42 (D.D.C.
    2011) ...................................................................................................................................... 6

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ................................................................................. 5

*\*Vasser v. McDonald*, 72 F. Supp. 3d 269 (D.D.C. 2014) ........................................................... 22

*\*Wolfram Alpha LLC v. Cuccinelli,* 490 F. Supp. 3d 324 (D.D.C. 2020) ..................... 4, 10, 15, 18

*Yun Ja Chung v. Chrysler Corp.*, 903 F. Supp. 160 (D.D.C. 1995) ............................................. 18

## STATUTES

2 U.S.C. § 1408....................................................................................................................... 16

28 U.S.C. § 1391.................................................................................................................... 5, 9

28 U.S.C. § 1404....................................................................................................................... 3

## RULES

Fed. R. Civ. P. 45................................................................................................................... 19

## I.     INTRODUCTION AND FACTS

This case is not a simple local Texas case that should be heard in Texas.  Plaintiff has elected to file suit in Washington, which is where Defendant originally employed him, where the hostile work environment occurred, from whence that hostile environment – including pressure on Plaintiff to resign continued, where records are stored, and where Chief of Staff Schroeder, arguably the most important witness, is subject to subpoena. While some events occurred in Texas, the weight of factors that must be considered require this case to remain here, in Washington.

Defendant hired Plaintiff to work as a Legislative Correspondent – in the Defendant's District of Columbia office – in January 2021. The hostile work environment also commenced while Plaintiff worked in Washington, based on the actions and comments of Chief of Staff Schroeder, who works and has his office in the District of Columbia. While Plaintiff worked in Washington, Schroeder regularly made anti-gay comments to Plaintiff, such as "it's Adam and Eve, not Adam and Steve," and "Gays go to hell." Cplt. ¶ 16. Schroeder regularly made other offensive comments and jokes about gay people, and he often remarked that he thought that men who were not "manly" or "masculine" had an inclination toward homosexuality. *Id.*

Schroeder referenced being gay as a "lifestyle" in conversation with Plaintiff, a comment that was deeply hurtful to Plaintiff because it indicates that being gay is a choice and associates gay people with a hyper-sexual and promiscuous lifestyle.  Cplt. ¶ 17-18. Furthermore, while Plaintiff was still employed in Washington, Schroeder told Plaintiff not to engage with gay constituents and that Rep. Nehls would ever support legislation that could be considered "pro-gay." Cplt. ¶ 19.

During Plaintiff's tenure in Washington, Schroeder withheld training for Plaintiff on IndiGov, the constituent relationship software that was used as the backbone of a Legislative Correspondent's work. Cplt. ¶ 20.

Because of direct anti-gay hostility from Mr. Schroeder, Plaintiff asked to be transferred to the District Office, which was in Richmond, Texas at the time, to be a Field Representative. Plaintiff was transferred to the Texas office in May 2021. *Id.* at ¶ 21. In the process of transferring Plaintiff to the Richmond, Texas District Office, Chief of Staff Schroeder told the Deputy District Director, Mary Davis, that Plaintiff did not "fit in" at the D.C. Office and was "too sensitive," which was a reference to Plaintiff's sexuality. *Id.* at ¶ 22. Had Schroeder not harassed him, Plaintiff would have remained employed in Washington, D.C. *Id.* at ¶ 23.

There is no dispute that Schroeder was Plaintiff's second-level supervisor at all times. *See* Cplt. and Answer at ¶ 26. But even though Plaintiff was a direct report to the District Director on paper, Chief of Staff Schroeder often required Plaintiff to report directly to him in Washington. D.C. Cplt. ¶ 26.

Both before and after Plaintiff moved to Texas, Rep. Nehls and Chief of Staff Schroeder regularly asked Plaintiff why - if he was a "normal man" - he was not romantically interested in Rep. Nehls' daughter, with whom Plaintiff was friends.

In January 2022, during a phone call from Washington to Plaintiff in Texas, Schroeder told Plaintiff that he must have contracted COVID-19 by "kissing a lot of boys." Cplt. 32.

In March 2023, Schroeder and Rep. Nehls made the decision – from Washington – not to offer the vacant District Director position to Plaintiff, and instead they moved a D.C. staffer to Texas to fill the job. Cplt. 42. Subsequently, in telephone calls that Schroeder initiated

Washington, Nehls told Plaintiff he had no future with the Defendant and pressured Plaintiff on a daily basis to take a job with Big Brothers and Big Sisters. Cplt 43-49.

On October 13, 2023, Mr. Chadwell's last day in the Office, Mr. Schroeder called Mr. Chadwell from Washington and stated that Plaintiff's departure was due to the fact that Plaintiff and Schroeder's "lifestyles" did not align.  *Id.* at 52.

## II.    APPLICABLE LAW AND STANDARD

28 U.S.C. § 1404(a) (Change of Venue) governs this case and reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In *Martens v. Carlos Del Toro, Sec'y of the Navy*, No. 1:22-cv-992 (TNM), 2022 U.S. Dist. LEXIS 190218, at *2 (D.D.C. Oct. 18, 2022), this Court explained the process for determining whether a case should be transferred under section 1404(a): The Court starts by examining whether venue is proper in the proposed district and next considers whether one venue better serves the convenience of parties and witnesses and the interest of justice by weighing a number of private and public interest factors, which are given varying levels of deference. *Id.* at 2*.  (citing *Montgomery v. Barr*, 502 F. Supp. 3d 165, 173 (D.D.C. 2020) (McFadden) and 28 U.S.C. § 1404(a)).

Courts generally look to six private interest factors in evaluating transfer motions: 1) the plaintiff's choice of forum, unless the balance of convenience strongly favors defendants; 2) the defendants' choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the ease of access

to sources of proof. *Ctr. For Env't Sci. v. NPS*, 75 F. Supp. 3d 353, 357 (D.D.C. 2014) (citations omitted and cleaned up).

The public interest factors are "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Nat'l Parks Conservation Ass'n v. Zinke*, 2018 U.S. Dist. LEXIS 233814, at *3 (D.D.C. July 25, 2018).

Defendants bear the burden of demonstrating decisively that the balance of factors favors transfer. *Wolfram Alpha LLC v. Cuccinelli,* 490 F. Supp. 3d 324, 330 (D.D.C. 2020) ("The moving party has the burden to establish that transfer is proper.").

"Although the Court has broad discretion to adjudicate motions for transfer under § 1404(a), the Court may not transfer a case "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff.*" Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr. Ltd. Pshp*., 24 F. Supp. 2d 66, 70 (D.D.C. 1998) (relying on *Pain v. United Technologies Corp.* 637 F.2d 775, 783 (D.C. Cir. 1980)).

"[A] plaintiff's considerable freedom to bring a lawsuit in an advantageous forum should not be compromised by a transfer that 'merely shift[s] the inconvenience from one party to the other.'" *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31 (D.D.C. 2013) (relying on 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3848 (3d ed. 1998)); *Sheraton Operating Corp. v. Just Corp. Travel*, 984 F. Supp. 22, 26 (D.D.C. 1997) ("even if a transfer would significantly benefit the defendant, the Court will not grant the motion if the result merely would shift the inconvenience from defendant to plaintiff; the net convenience must increase.").

Generic declarations, stripped of any analysis, from other transfer cases are generally not helpful because Section 1404(a) requires an "*individualized, case-by-case consideration* of convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (emphasis added). Consequently, factual distinctions between cases that may even appear similar at first blush are significant.

### III.    ANALYSIS

### 1.  The Private Interest Considerations Favor Keeping this Case in Washington

#### a.  *Plaintiff's Choice of Venue is Entitled to Deference*

The first factor to consider is the Plaintiff's choice of venue, a factor that weighs in favor of keeping the case in this District and rejecting Defendant's motion, since the Plaintiff elected to file suit here.

Federal law affords Plaintiff the right to choose the venue for a civil action among the different venue options referenced in 28 U.S.C. § 1391(e), which include: (1) a district where the defendants reside, (2) a district in which a substantial part of the events giving rise to the claim occurred, or (3) a district where plaintiff resides, if no real property is involved. *Id. and see Chariots for Hire*, 918 F. Supp. 2d at 31 (plaintiffs enjoy "considerable freedom" to bring a lawsuit in an advantageous forum).

The Supreme Court has recognized that a Plaintiff's choice of venue is tantamount to a "privilege:" "Because *plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous* (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'" *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013) (emphasis added) (relying on *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)).

Although it is true that the deference to Plaintiff's choice is "somewhat diminished,"[1] when the plaintiff files suit in a District that is not his home, the District of Columbia has strong ties to the claims at issue here; indeed, the Plaintiff's claims and the hostile environment arose in this District.  Consequently, any potential reduction in deference to the Plaintiff's privilege of choice should be negated due to the "meaningful ties" this District has to the controversy and this District's interest in the outcome – namely the District of Columbia's interest in ensuring that discrimination within the District is addressed. *See Chariots for Hire,* 918 F. Supp. 2d at 32  (where Plaintiff's chosen venue has meaningful ties to the litigation, the District Court "must follow the ordinary rule and accord Plaintiff's choice of forum some deference in the transfer inquiry."); *see also United States ex rel. Westrick v. Second Chance Body Armor, Inc.,* 771 F. Supp. 2d 42, 47 (D.D.C. 2011) ("A plaintiff's choice of forum is entitled to deference, unless that forum has no meaningful relationship to the plaintiffs' claims or to the parties"); and *Cf Spotts v. United States*, 562 F. Supp. 2d 46, 52 (D.D.C. 2008)("the deference normally given to a plaintiff's choice of forum is lessened when the plaintiff's forum choice *lacks meaningful ties* to the controversy *and* has *no particular interest in the parties or subject matter*.") (emphasis added) (citations omitted and cleaned up); *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996) ("the showing defendants must make is lessened when the plaintiffs' choice of forum has *no factual nexus* to the case, *and*, where, as in this case, transfer is sought to the forum with which plaintiffs have substantial ties *and* where the subject matter of the lawsuit is connected to that state.") (emphasis added).

---

[1] *See Oudes v. Block*, 516 F. Supp. 13, 14 (D.D.C. 1981). In that widely cited case, however, the District Court held only that "the deference normally given to the plaintiff's choice of forum is somewhat diminished" because – given the fact that the Plaintiff resided in the District to which Defendant sought to transfer – "inconvenience or hardship to him … would be negligible or non-existent."  Thus, properly stated, the deference is "somewhat diminished" not "negligible or non-existent."

Defendant argues that Plaintiff's choice of venue should receive no deference, but the cases on which Defendant relies are not applicable because they all involve instances in which the chosen venue had no ties to or interest in the case. *See* Def. P& A at 5-6.

In *Claros v. Cowan*, Civ. No. 21-609, 2021 U.S. Dist. LEXIS 86678 at *4-5 (D.D.C. May 6, 2021), Maryland was the plaintiff's home state; USCIS headquarters was in Maryland; and the asylum case in question was being handled in Baltimore, which is also where all associated records and decisionmakers were located, and no other factors were in favor of the plaintiff's choice. In that case the deference to the plaintiff's choice was correctly whittled down to nothing, and the case was transferred to Maryland.

*Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) is no different. In that case, the USCIS immigration office was located in Fairfax; the determination on the challenged Petition occurred in Fairfax; plaintiff resided in Virginia; and the appeal was handled by the Board of Immigration Appeals in Falls Church. With no connection to the case, either by way of parties or events, the plaintiff's preference was properly negated, and the case was transferred to Virginia.

*Aishat v. United States Dep't of Homeland Sec.*, 288 F. Supp. 3d 261 (D.D.C. 2018) is another immigration matter. The plaintiff (a resident of Texas) sued for mandamus in the District of Columbia, even though his application for naturalization was being handled by the Dallas USCIS field office. There again, the deference was negated because of the absolute lack of connection between the District of Columbia and the controversy, and in the absence of any other factors in favor of keeping the case. *Id.* at 264-65, 268-69, and 269 ("all relevant contacts between Defendants and Plaintiff unfolded at the Dallas Field Office.").

Lastly, *Jimenez v. R&D Masonry, Inc*., 2015 U.S. Dist. LEXIS 156850, 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015) was a wage and hour case under the FLSA, in which there was  no

nexus between the events complained of and District of Columbia, 90% of the Defendant's business was conducted in Maryland, and all employee-payment decisions that formed the basis of the civil action were made by the Defendants in Maryland.

Because, as discussed in section 3, below, this District has material ties to this civil action, Plaintiff's privilege of choice, and the Court's deference to that choice must remain in place in this case, even if Washington, D.C. is not Plaintiff's home.

### b. _The Defendant's Choice Of Forum is Entitled to No Deference_

Defendant claims that its choice of venue should outweigh that of the Plaintiff. But that is not how the analysis works.  The Defendant's choice essentially cannot outweigh that of Plaintiff under longstanding analysis.  "While a defendant's choice of forum is a consideration when deciding a § 1404(a) motion, it is not ordinarily entitled to deference. And here, where Defendants move to transfer over Plaintiff's opposition, they must establish that the added convenience and justice of litigating in their chosen forum overcomes the deference ordinarily given to Plaintiff's choice." _Chariots for Hire_, 918 F. Supp. 2d at 32 (relying on _Mahoney v. Eli Lilly & Co._, 545 F. Supp. 2d 123, 127 (D.D.C. 2008)).

Instead, the Defendant must show that the combination of all of the other factors "strongly" outweighs Plaintiff's choice of forum. "Unless the balance is _strongly in favor of the defendant_, the plaintiff's choice of forum should _rarely_ be disturbed." _Gulf Oil Corp. v. Gilbert_, 330 U.S. 501, 508 (1947) (emphasis added).  "It is almost a truism that a plaintiff's choice of a forum will _rarely_ be disturbed and, so far as the private interests of the litigants are concerned, it will not be unless the balance of convenience is _strongly_ in favor of the defendant.  _Gross v. Owen_, 221 F.2d 94, 95 (D.C. Cir. 1955) (emphasis added).  "[T]he D.C. Circuit has long held that a plaintiff's choice of forum will _rarely be disturbed_ … unless the balance of convenience is _strongly_ in favor of the

defendant." *Rossville Convenience & Gas, Inc. v. Barr*, 453 F. Supp. 3d 380, 387 (D.D.C. 2020) (emphasis added) (quoting *Gross*).

Moreover, Defendant resides in the District of Columbia  - not Texas - for purposes of the Venue Act, 28 U.S.C. 1391(e)[2].  The term "resides" as used in section 1391(e) does not refer to a personal residence of course. "[U]nder § 1391(e) the place where the defendant resides is not the defendant's personal residence but his *official* residence, *i.e.*, where his official duties are performed." *Archuleta v. Sullivan*, 725 F. Supp. 602, 605 (D.D.C. 1989); *Lamont v. Haig*, 590 F.2d 1124, 1128, n.19 (D.C. Cir. 1978) ("What controls is the official residence of the federal defendant where the official duties are performed and not the personal residence of an individual who is a defendant.")(citing cases).

Defendant resides in the District of Columbia because it maintains his primary office here and conducts his official duties here – namely debating and passing legislation.  Indeed, according to the Declaration of Defendant's Chief of Staff, Robert Schroeder (Def's Ex. 1), while the Defendant maintains offices in both Texas and D.C., Representative Nehls (the head of the Office) "splits his time between the D.C. Office and *attending official events in the congressional district in Texas*." *Id.* ¶ 6 (emphasis added). Additionally, Chief of Staff Schroeder, who oversees all Office personnel, works from the District of Columbia office, and his declaration mentions absolutely no official duties that he performs in Texas. Thus, according to the Declaration – there is only one fixed place or office that the principals of the Defendant (and the principal discriminating officials) use for official duties (as opposed to "attending official events"), and that is the Washington Office. Representative Nehls' home residence in Texas is not a consideration.

---

[2] That provision reads, in pertinent part: "A civil action in which a defendant is an officer or employee of the United States… may … be brought in any judicial district in which (A) a defendant in the action resides…"

Allowing Defendant's preference to outweigh that of Plaintiff would violate the well-established "privilege," under which plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous *Atl. Marine Constr. Co.*, 571 U.S. at 63.

### c.  *The Claim Arose in the District of Columbia*

In considering a motion to transfer, the Court examines whether there is a nexus between the underlying transactions giving rise to the claim and the forum selected. *See, e.g., Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 158 (D.D.C. 2008).

For the purpose of a § 1404 transfer analysis, "[c]ourts in this district have held that claims 'arise' . . . in the location where the corporate decisions underlying those claims were made, . . . or where most of the significant events giving rise to the claim occurred." *Treppel v. Reason*, 793 F. Supp. 2d 429, 436-37 (D.D.C. 2011). *See also Wolfram Alpha*, 490 F. Supp. 3d at 331-32 (D.D.C. 2020) ("courts generally focus on where the decisionmaking process occurred to determine where the claims arose"). As the District Court stated in *Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1 (D.D.C. 2004), "the material events in question [for purpose of determining where claim arose] are the actions the defendants took that allegedly caused the economic damage." *Id.* at 4 (internal citations omitted).Thus, the focus of this Court's inquiry should be on the location in which the decision that caused Plaintiff's harm were taken, and that is Washington.

As discussed in the fact section above, Plaintiff was hired to work as a Legislative Correspondent in the Defendant's District of Columbia office – in January 2021, where he remained for five months until May 2021. The hostile work environment also commenced while Plaintiff worked in Washington, based on the actions and comments of Chief of Staff Schroeder, who works and has his office in Washington.

Because of direct anti-gay hostility from Mr. Schroeder, Plaintiff asked to be transferred from Washington to Texas, but had Schroeder not harassed him, Plaintiff would have remained employed in Washington.

Even after Plaintiff moved to Texas, Schroeder's harassment from Washington continued, including with comments about why Plaintiff was not interested in dating Rep. Nehls' daughter and that Plaintiff must have contracted COVID-19 by "kissing a lot of boys.

In March 2023, Schroeder and Rep. Nehls made the decision – from the D.C. Office – not to offer the vacant District Director position to Plaintiff, and instead they moved a D.C. staffer to Texas to fill the job.  Cplt.  42.  Subsequently, in telephone calls that Schroeder initiated from Washington, Nehls told Plaintiff he had no future with the Defendant and pressured Plaintiff on a daily basis to take a job with Big Brothers and Big Sisters.   On October 13, 2023, Mr. Chadwell's last day in the Office, Mr. Schroeder called Mr. Chadwell from his (Mr. Schroeder's) office in D.C. and stated that Plaintiff's departure was due to the fact that Plaintiff and Schroeder's "lifestyles" did not align.

Clearly the hostile work environment originated in Washington, when Plaintiff was working as a legislative correspondent in the Washington Office.  But even thereafter, all of the telephone calls by and through which Schroeder continued the hostile work environment are deemed to have occurred in Washington, because Schroeder was in Washington when he made these comments and calls. *See Margoles v. Johns*, 483 F.2d 1212, 1218 (D.C. Cir. 1973) ("The 'act,' of course, is the act of the alleged tortfeasor -- here that act, uttering defamatory statements, occurred in Wisconsin. Nothing can change that fact."); *Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir. 1983)(Scalia)(holding that statements made in a telephone conversation occur in the state in which the statements were uttered).

The pressure that Chief of Staff Schroeder used to force Plaintiff to resign also occurred in Washington, even though the economic impact was felt in Texas: "The *situs* of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." *Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004). *Helmer* relied heavily on in *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990), a case in which a New York resident was terminated from his job in New Jersey, the result of a decision made at the employer's location in New Jersey. In that case the Second Circuit held that the New York long arm statute did not bring the case to New York, and instead the case had to be heard in New Jersey. *See Helmer*, 393 F.3d at 208 (relying on *Mareno v. Rowe*, 910 F.2d 1043, 1045 (2d Cir. 1990)). *Mareno* is directly on point here, where Plaintiff's employment, in Texas at that time, terminated because of decisions made by Nehls and Schroeder in Washington and communicated from Washington.

The above demonstrates that the bulk of the Defendants' discriminatory conduct occurred in Washington – not Texas, and that includes the creation of the hostile work environment, Plaintiff's transfer to Texas, and forcing Plaintiff to resign from his position.  Defendant's bullet point list of asserted facts to the contrary are not availing. Def's P&A at 6.

- Taking the first bullet, the simple act of employing Plaintiff in Texas was not discriminatory, nor was Plaintiff's residing in Texas. Thus, neither of those facts should considered in determining where the claim arose.

- Responding to the second, fourth and fifth bullets, while it is true that *some* harassment occurred in Texas, the bulk of the harassment was conducted by Chief of Schroeder, from Washington, and indeed the discrimination in Washington was what forced Plaintiff to move to Texas.

- While in the third point Defendant argues that only one hostile act occurred within the 180-day limitations periods, Defendant fails to appreciate that the call in question was placed from Washington since that is where Schroeder initiated the call and made the comment that his and Plaintiff's "lifestyles" did not align. *See Helmer, Margoles, and Tavoulareas, supra.*

- Addressing the sixth bullet point, about Nehls' and Schroeder's comments that Plaintiff would be interested in Nehls' daughter if he was a "normal man," those comments commenced in Washington and continued in Texas, and so they support the argument that the claim arose in Washington.

- Regarding the seventh bullet, the pressure to take the position with Big Brothers, Big Sisters, that was pressure applied by Schroeder from Washington – not in Texas. *See Helmer, Margoles, and Tavoulareas, supra.*

- As for the decision to hire someone to replace Plaintiff – that decision was again made in Washington, by Schroeder and Nehls, as was the decision not to offer the District Director position to Plaintiff. *See Helmer, supra.*

- While it is true that Plaintiff would have enjoyed the economic benefit of his position in Texas, that point does not change that binding D.C. precedent holds that the situs of the decision to remove Plaintiff (or to pressure Plaintiff to leave) was Washington – not Texas. *Helmer, supra.*

- Additionally, according to *Helmer,* even though Mr. Cadwell will experience the emotional suffering from losing his position in Texas, where he lives, the situs of the injury is Washington, where the decision was made and from whence the pressure on Plaintiff was applied.

13

The facts in this case are significantly different than those in *Pope v. Office of Congressman Lamborn*, 2021 U.S. Dist. LEXIS 175005 (D.D.C. Sep. 15, 2021).  In *Pope*, a retaliation case, the District Court (Chief Judge Boasberg) noted that Pope had never worked in the Congressman's D.C. Office, that the plaintiff's workplace safety concerns were based on conditions in the Colorado field office, that the plaintiff's protected activity occurred in Colorado.  Given those facts, Judge Boasberg held that the case arose in Colorado.  But as explained above, the facts in this case are much different.  Mr. Chadwell worked in Washington between January and May 2021, and he would not have moved to Texas, but for the discrimination. The discriminatory conduct occurred in Washington, both while plaintiff worked here, and after plaintiff moved to Texas, and the pressure for Plaintiff to resign was applied from Washington.  Under those circumstances, this case arose in Washington, not Texas. *Helmer*, 393 F.3d at 208 ("The situs of the act of termination is where the decision was made, not where the injury was felt); *Margoles*, 483 F.2d at 1218 (tortious act of defamation occurs where statement was made).

While some cases stand for the proposition that a motion for transfer cannot be defeated merely because decisionmakers were located in Washington, those cases are typically federal environmental law cases in which the decisionmakers are federal officials merely signing off on federal action, but where the projects themselves are elsewhere in the country, and where the officials are relying on years of studies, public meetings, ballot initiatives, and Federal Environmental Impact Studies and Records of Decisions were developed, and subject to public review in the transferee jurisdiction.  *See, e.g. M Airport Working Grp. of Orange Cty. v. United States Dod*, 226 F. Supp. 2d 227, 231 (D.D.C. 2002)( even if the ROD was signed by a Navy official in Washington, D.C., that is not the significant event for purposes of this lawsuit. Rather, the ROD was the culmination of close to a decade's worth of study, public meetings and debate

involving Navy officials at El Toro, local governmental entities, and local citizens and interested organizations, as well as the results of four ballot initiatives dating back to 1994); *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25 (D.D.C. 2002)  (evidence developed showed that Washington Officials were not involved in decisions and instead field office in transferee district "have been actively involved in the determination of the Tribe's interest … and the possible disposal of the property.").  This is not such a case.  Plaintiff felt the impact of the discrimination in Washington , and that discrimination drove him to leave Washington in favor of a position in Texas.  And Chief of Staff Schroeder was not a mere approving official with no involvement in the discrimination against Plaintiff.   To the contrary, Schroeder was the main driver of the discrimination, and his conduct, including numerous calls to Plaintiff pressuring him to resign, originated from this District, not Texas.

        *d.*  *The Convenience of the Parties*

Plaintiff has decided to file this case in Washington, D.C., a clear sign that the venue is convenient for him.  Moreover, the Office is located in Washington, D.C. and that is where Rep. Nehls typically transacts his official business. Also, Chief of Staff Schroeder, perhaps the most important actor in this case, works in the Washington office.  Thus, the convenience of the parties factor favors keeping this case in Washington. "Venue is convenient where parties are located." *Wolfram Alpha*, 490 F. Supp. 3d at 333.

Additionally, on the convenience of the parties factor, Plaintiff notes that while some cases stand for the proposition that location of the parties' attorneys should not be a factor,[3] other cases hold that it is a factor to be considered, albeit not a strong one.  *See McClamrock v. Eli Lilly & Co.*

---

[3] For example, Defendant cites to Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs, 893 F. Supp. 2d 49, 56 (D.D.C. 2012) and *Claros v. Cowan*, 2021 WL 1820209 (D.D.C. May 6, 2021) for the propositions that location of counsel is either not a consideration, or irrelevant, respectively.

267 F.2d 33, 40-41 (D.D.C. 2003) (holding that inconvenience to counsel is "not a factor that carries considerable weight and relying on cases holding that the factor is given "little if any" weight. While perhaps a minor point, we note that convenience to the parties' counsel is a factor that can be considered and that could be determinative in an otherwise close call. Given that both parties' counsel are located in Washington means that this factor, even standing alone, is a factor in favor of keeping the case in Washington.

But this case does not involve simple inconvenience to counsel. Transferring this case to Texas would provide an unfair advantage to Defendant. This is because Plaintiff's undersigned counsel will have to petition for admission to the Southern District of Texas, and incur a fee of $199,[4] and he will be expected to take a *pro bono* case as often as once a year. LR 83.1.E ("It is hoped that as a matter of public service a member of the Bar of the Southern District of Texas will accept an uncompensated assignment to an indigent's civil matter as often as every twelve months."). Meeting that expectation will be financially impossible for the undersigned in light of the small size of the undersigned's firm, and the undersigned will be forced to decline any assigned *pro bono* cases from Texas, which would put the undersigned in bad standing with that Court. Additionally, the undersigned has already been turned down (or ignored) by six well-qualified attorneys to act as local counsel, which gives rise to a strong concern that Plaintiff will have difficulty retaining experienced local counsel to assist with this matter.

Defendants do not face the same demands. Under the Congressional Accountability Act, the attorneys from the U.S. House of Representatives, Office of House Employment Counsel, are permitted by law to appear in any federal court in the country without regard to any admission requirements. *See* 2 U.S.C. § 1408(d)(1) ("The House Employment Counsel … shall be entitled,

---

[4] https://www.txs.uscourts.gov/page/attorney-admissions-requirements

… to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court"). Moreover, Defendants' counsel can associate with the Local U.S. Attorney's office in Texas if they so desire, giving them access to free and highly qualified local counsel – an option that the Plaintiff does not enjoy.

In light of these factors, including the difficulty in locating local counsel, the convenience of the parties factor is in the Plaintiff's favor.

e. *The Convenience of Essential Witnesses*

The most essential witnesses in this case are the Plaintiff, Chief of Staff Schroeder, who is the primary discriminating official in this case, and Rep. Nehls who also engaged in discrimination and presumably contributed to the decision to pressure Plaintiff to leave his position. Thus, the question to consider is where these essential witnesses are located. *McClamrock v. Eli Lilly & Co.*, 267 F. Supp. 2d 33, 40 (D.D.C. 2003) (focusing on where *essential* witnesses are located and where their presence at trial can be compelled).

Although Plaintiff resides in Texas, he has filed suit in Washington and will travel to the District as necessary for discovery and trial.

Rep. Nehls can be subpoenaed for trial in either Washington or Texas, per F.R.C.P. 45, because he resides and regularly conducts business, both, in Texas and the 100-mile radius around the courthouse in Washington.

Chief of Staff Schroeder is another matter completely, however. Mr. Schroeder does not live in Texas, and his only residence is in Stafford County Virginia, within the 100-mile radius of this courthouse.[5] Mr. Schroeder regularly transacts business in Washington – where he maintains

---

[5] The furthest point in Stafford County is only approximately 62 miles from this Courthouse.

his office. Thus, arguably, Mr. Schroeder can _only_ be compelled to appear at trial if this case remains in Washington.  Given that Mr. Schroeder is the most essential witness, this factor is strongly in favor of keeping the case in Washington. *See McClamrock*, 267 F. Supp. 2d at 40.

Additionally, because Defendant bears the burden of proof and persuasion on a motion to transfer (*Wolfram*, *supra*), Defendant was required to supply proof that keeping this trial in Washington would cause inconvenience to witnesses. As the District Court held in *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002), "[t]o support its request for transfer under section 1404(a), a moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." *See also Foote v. Chu*, 858 F. Supp. 2d 116, 122 (D.D.C. 2012) (even though most relevant witnesses resided in New Mexico, the court did not transfer in part because "at no point has Defendant represented that any of the witnesses … would be unavailable for trial, that is, unwilling to appear absent a trial subpoena from this Court."); *and C.f., Yun Ja Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995) (key witness established by affidavit that he would not be within courts subpoena power at time of trial). *And see NFR, LLC v. Corizon Health, Inc.,* 2015 U.S. Dist. LEXIS 108116, at *16 (E.D. Va. Aug. 17, 2015) ("The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.")(relying on *Thayer/Patricof Educ. Funding*); *Samsung Elecs. Co. v. Rambus Inc.,* 386 F. Supp. 2d 708, 719 (E.D. Va. 2005) ("Merely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness

and the necessity of compulsory process."). Defendant has done none of that in this case, and consequently, Defendant has not upheld its burden to demonstrate any inconvenience to witnesses.

On this factor, it bears noting that for convenience of witnesses during discovery, depositions be held remotely. *Foote v. Chu*, 858 F. Supp. 2d 116, 122 (D.D.C. 2012) (availability of remote depositions by videoconference avoids need for witnesses to travel for discovery). or Moreover, depositions can be compelled and held in Texas for any witnesses who do not agree to remote depositions. Subpoenas for depositions can be issued by this Court and served on witnesses for depositions in Texas pursuant to Fed. R. Civ. P. 45 (a)(2) (subpoena issued by court where actin is pending) and (b)(2) (subpoena can be served at any place within the United States) and (c)(1) (subpoena may command witness appearance within 100 miles of witness' home or place of work).

And when it comes to trial, "Even witnesses unwilling to appear at trial can be subjected to videotape depositions that adequately capture their demeanor and credibility for purposes of a trial." *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res.*, 196 F. Supp. 2d at 34-35 (relying on *DealTime.com Ltd. v. McNulty*, 123 F. Supp.2d 750, 757 (S.D.N.Y. 2000) (witness unavailability would "not tip the balance in favor of a transfer in light of the option of videotaping testimony of witnesses unwilling to travel")); *Estate of Rick v. Stevens*, 145 F. Supp.2d 1026, 1038 (N.D. Iowa 2001) (any inconvenience imposed by inability to subpoena witnesses to trial can be addressed through use of videotaped depositions); *Quezada v. Darden Restaurants, Inc.*, 139 F. Supp.2d 666, 668 (W.D. Pa. 2001)); *and see SoundExchange, Inc. v. Music Choice,* 2020 U.S. Dist. LEXIS 25922, at *15 (D.D.C. Feb. 14, 2020)(same).

Courts in this District have also held that the likelihood that a motion to transfer is motivated by an attempt at forum shopping is also a public interest factor to consider. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) ("Public-interest

considerations that weigh against a transfer include the possibility that the defendants are forum shopping."); *Lewis v. Nat'l Football League,* 813 F. Supp. 1, 5 (D.D.C. 1992) (interest of justice not served when Section 1404 used as forum shopping tool).

### f.   *The Private Interest Factors Support Keeping this Case in Washington.*

The balance of the private interest factors is strongly in favor of keeping this case in Washington and denying Defendant's motion to transfer.  Plaintiff's preference, which is entitled to deference, is Washington; the claim arose in Washington; Plaintiff would have remained in Washington absent the discrimination; much of the harassment continued from Washington even after Plaintiff transferred to Texas; Representative Nehls' primary place for official duties is Washington; the most important witness (Chief of Staff Schroeder) is within this Court's subpoena power, but not that of the Southern District of Texas; and the Defendant has not established that trial in Washington would be inconvenient for any witness.

### 2.   The Public Interest Factors Favor Keeping this Case in Washington

We now examine the public-interest factors, namely: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home.

### a.   *The Transferee Forum's Familiarity with the Governing Laws*

Plaintiff agrees that this factor does not strongly favor either side. Both United States District Courts are perfectly capable of effectively adjudicating this civil action.  That said, after a diligent search, the undersigned was not able to find any Congressional Accountability Act cases decided in Texas.  On the other hand, a cursory Lexis search reveals over 150 reported cases in which this District Court and the D.C. Circuit have handled Congressional Accountability Act cases.

Consequently, this Court has more familiarity with Congressional Accountability Act cases, the caselaw on the CAA is far more developed here, and there are far more precedential opinions to assist in any determinations made in this Court. Thus, even though it is not a strong factor, this one goes on Plaintiff's side of the ledger.

### b.  *The Relative Congestion Of The Calendars Of The Courts*

Plaintiff concurs that the congestion factor does not favor either side.

### c.  *The Local Interest In Having Local Controversies Decided At Home*

The third public interest factor favors keeping this case in the Washington, because this District has a strong interest in addressing unlawful employment discrimination that occurs here.

As described above, this case arose in Washington, because Defendant maintains its largest office in Washington, D.C., the bulk of the discriminatory conduct occurred and/or originated here, and the pressure placed on Mr. Chadwell to resign his position came from Washington. *See Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs,* 893 F. Supp. 2d 49, 56 (D.D.C. 2012) (a "matter [is] local to that district" when "a clear majority of the operative events took place within the [district].") Likewise, in *Jimenez,* 2015 U.S. Dist. LEXIS 156850, at *12, the District Court held that "[w]hen a defendant has substantial business engagements in a particular district, that district has a strong local interest in resolving that controversy." In *Jimenez*, the District Court noted that most of the defendant's operations occurred in Maryland, a factor that favored transfer. Here the result is different. The Defendant conducts its primary function in Washington, where Rep. Nehls performs his legislative work. Additionally, Ms. Schroeder, the chief discriminator, works from the Washington office, and the Defendant employs more staff in Washington. Consequently, the Defendant's most substantial business engagements are in Washington, not Texas.

Defendant again tries to compare this case to that of *Pope*, which was transferred from Washington to Colorado. Defendant cites to *Pope* because Judge Boasberg held that Colorado had a greater interest in addressing how the employer dealt with its Colorado employees. The facts in this case, however, are far different than those in *Pope*. For one, the plaintiff in Pope was never employed in Washington. Secondly, Mr. Pope was only complaining about the defendant's COVID-19 policies (or lack thereof) in the Colorado office, and he was fired for those complaints. Those facts supported the court's conclusion that the case involved how the defendant managed its Colorado workforce.

In this case, Chief of Staff Schroeder initiated the hostile work environment against Mr. Chadwell while Mr. Chadwell was employed in Washington, and that discriminatory conduct drove plaintiff to leave his employment in Washington. Subsequently, Chief Schroeder continued his harassment of Plaintiff from the Chief's office in Washington and applied pressure (again from Washington) on Plaintiff to resign his position. Under those circumstances, this case certainly involves the Defendant's employment practices *in Washington*. Given that Washington is the Defendant's largest office, where Defendant employs the most staffers, this District, not Texas, has the greater interest in the outcome of the litigation.

Courts in this District have held that the District of Columbia has a strong interest in addressing "harms [that] were allegedly perpetrated by parties living or working within the District of Columbia." *Vasser v. McDonald*, 72 F. Supp. 3d 269, 283 (D.D.C. 2014)(Contreras)(internal citations omitted). Additionally, "the District of Columbia clearly has a compelling interest in deciding disputes that involve management and supervisors working within its jurisdiction." *Id. See also Payne v. Giant of Md., L.L.C.*, 2006 U.S. Dist. LEXIS 44004, at *17 (D.D.C. June 28, 2006) (Kessler) ("controversies should be resolved in the locale where they arise."); *Kafack v.*

*Primerica Life Ins. Co*., 934 F. Supp. 3, 9 (D.D.C. 1996) (Urbina) (case should be heard where majority of operative events occurred).

Given all of the above, Washington has a strong interest in keeping this litigation here.

      d.   <u>The Likelihood Of Forum Shopping</u>

Lastly, in its brief, Defendant recounts how important Representative Nehls is to his constituents in Texas, and how many of them he has helped in his tenure there. Def's P&A at 14. These considerations – which have no relevance whatsoever to the factors to be considered in a transfer motion – give rise to a plausible possibility that Defendant seeks to transfer this case to Texas because Defendant believes a Texas court, where Rep. Nehls' devoted political constituents will make up part of the jury pool, will be more favorable to it than a Washington court and jury, which does not have such a familiar relationship with Representative Nehls, and where Plaintiff will have a harder time finding local counsel who will work with him against a powerful political official in the region. Therefore, and as Judge Urbina noted in *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 130, the plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping weighs against granting the defendants' motion.

      e.   <u>The Public Interest Factors Are in Plaintiff's Favor</u>

Like the private-interest factors, the public interest considerations align with keeping this case in Washington. This Court and Circuit have much stronger precedent, developing and interpreting the Congressional Accountability Act. Indeed, Texas appears to have none at all. Moreover, Washington has a strong interest in addressing alleged discrimination at the hands of Washington employers. Lastly, it would appear that the request to transfer is truly a cloaked effort at forum shopping, which would turn the Plaintiff's privilege of selecting the most advantageous venue on its head and result in the Defendant being able to choose the venue that best suits it. the

Court may not transfer a case "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Atl. Marine Constr. Co.*, 571 U.S. at 63; *Shapiro, Lifschitz & Schram,* 24 F. Supp. 2d 70 (*supra*);

### IV.    CONCLUSION

The individualized analysis required for motions to transfer reveals that both the private-interest and public-interest factors are strongly in favor of keeping this case in Washington. Plaintiff's choice of venue is Washington, and because this case arose in Washington, which therefore has material ties to and a strong interest in the outcome of the case, and because essential witnesses are subject to this Court's subpoena power to compel their presence at trial, Defendant's motion to transfer should be denied, and litigation should proceed in this Court.

Signed and Respectfully Submitted,

Leslie D. Alderman III (DC Bar No. 477750)
ALDERMAN, DEVORSETZ & HORA, PLLC
1025 Connecticut Ave., NW,
Suite 615
Washington, DC 20036
Tel: 202-969-8220
lalderman@adhlawfirm.com
Attorney for Plaintiff

24