**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ALEX CHADWELL,** | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 1:24-CV-02392-TNM |
|  | ) |
| **THE OFFICE OF** | ) |
| **CONGRESSMAN TROY NEHLS,** | ) |
|  | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF**
**ITS MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

ARGUMENT.....................................................................................................................................2

    I.    Taken Together, the Private-Interest Factors Back Transfer ..........................................2

        A.  Mr. Chadwell's forum choice, unlike the Office's, deserves no deference ...........2

        B.  Mr. Chadwell's claim arose in Texas ....................................................................6

        C.  Texas is more convenient and offers greater ease of access to proof ...................10

        D.  In short, the private-interest factors bolster the case for transfer...........................12

    II.   On the Whole, the Public-Interest Factors Also Back Transfer ....................................12

        A.   Both courts can ably adjudicate Mr. Chadwell's federal claim ............................12

        B.  Neither Court is clearly more congested than the other.........................................14

        C.  Texas has a local interest in resolving this controversy at home ..........................14

        D.  Mr. Chadwell may be trying to forum-shop............................................................15

        E.  Viewed together, the public-interest factors also bolster the case for transfer.......16

CONCLUSION.................................................................................................................................17

## **TABLE OF AUTHORITIES**

*Aishat v. U.S. Dep't of Homeland Sec.,* 288 F. Supp. 3d 261 (D.D.C. 2018) ............................. 5

*Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55 (D.D.C. 2010) ..................... 11

*Claros v. Cowan,* No. 21-609 (JEB), 2021 WL 1820209
(D.D.C. May 6, 2021) ...................................................................................................... 3, 5

*Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24 (D.D.C. 2013) .......................................... 3, 5

*Helmer v. Doletskaya*, 393 F.3d 201 (D.C. Cir. 2004) ............................................................ 9

*Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84 (D.D.C.2011) ............................................ 13

*Jimenez v. R&D Masonry, Inc.,* CivNo. 15-1255 (JEB), 2015 WL 7428533
(D.D.C. Nov. 20, 2015) ....................................................................................................... 4

*Mareno v. Rowe,* 910 F.2d 1043 (2d Cir. 1990) ..................................................................... 9

*Margoles v. Johns,* 483 F.2d 1212 (D.C. Cir. 1973) ............................................................... 9

*Moore v. Off. of the Architect of the Capitol,* 828 F. Supp. 2d 254 (D.D.C. 2011) .................... 13

*Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48 (D.D.C. 2011) ..................................... 13

*Ngonga v. Sessions,* 318 F. Supp. 3d 270 (D.D.C. 2018) ........................................................ 3

*Oudes v. Block,* 516 F. Supp. 13 (D.D.C. 1981) .................................................................... 3

*\*Pope v. Off. of Congressman Lamborn*, No. 21-1321 (JEB), 2021 WL 4192029
(D.D.C. Sept. 15, 2021) .......................................................................... 9, 10, 14, 15, 16

*Spotts v. United States*, 562 F. Supp. 2d 46 (D.D.C. 2008) ..................................................... 3

*Tavoulareas v. Comnas*, 720 F.2d 192 (D.C. Cir. 1983) ......................................................... 9

*Timmons v. U.S. Capitol Police Bd.,* 407 F. Supp. 2d 8 (D.D.C. 2005) ................................... 13

*Trawick v. Hantman,* 151 F. Supp. 2d 54 (D.D.C. 2001) ....................................................... 13

*Trout Unlimited v. U.S, Dep't of Agric.,* 944 F. Supp. 13 (D.D.C. 1996) .................................. 4

*United States v. Brewster*, 408 U.S. 501 (1972) .................................................................... 6

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.,* 771 F. Supp. 2d 42 (D.D.C. 2011) ...... 3

**Statutes**

2 U.S.C. § 1301 *et seq.* ....................................................................................................... 13

2 U.S.C. § 1302(a) .............................................................................................................. 13

**Other Authorities**

Fed. R. Civ. P. 45(c)(1) ....................................................................................................... 10

# **INTRODUCTION**[1]

Plaintiff, in his opposition, spends considerable time trying to deny the simple fact that he was employed by Defendant *in Texas* for the two years and five months before he resigned. Instead of accepting the basic fact that only five months of his employment were in Washington, D.C. (which were at the beginning of 2021—far outside the limitations period of this case), Plaintiff attempts to portray his employment as D.C.-based. Basic math and reality prove otherwise.

Additionally, Plaintiff relies heavily on the fact that Robert Schroeder, the Chief of Staff for Representative Nehls, lives in the D.C. area. Plaintiff incorrectly claims that Mr. Schroeder would not be subject to a subpoena in Texas, but then goes to great lengths to explain how countless Texas witnesses should sit for a video deposition and deprive the Court of live testimony. Mr. Schroeder, as the Chief of Staff and a party representative, regularly travels to Texas, would make himself available for a deposition *and* for trial, and would be subject to a subpoena under Federal Rule of Civil Procedure 45. The same cannot be said for the numerous Texas-based non-party witnesses.

Finally, Plaintiff's opposition also attempts to blur the fact that this case contains only one count—for Hostile Work Environment Based on Sex (Sexual Orientation). Plaintiff points to allegations of discriminatory non-promotion, constructive discharge, and transfer; however those are not claims in this case, and would be untimely if they were. The alleged location of the decision-maker is of minimal importance because this case is not about discriminatory decisions.

---

[1] As reflected in the Answer and its initial Motion, the Office adamantly denies that Plaintiff was mistreated in any way. For purposes of this Motion and Reply only, the Office considers the events to have occurred as alleged in the Complaint which, as explained herein, were in Texas.

On the other hand, the location of the "work environment" for the vast majority of Plaintiff's employment, is paramount. That location was Texas, not Washington, D.C.

As explained in Defendant's initial Motion, and further discussed below, both the private- and public-interest factors favor transferring this case to the Southern District of Texas.

## ARGUMENT

As Defendant demonstrated in its initial Motion, transfer is warranted here because venue lies in the Southern District of Texas, and both private-interest factors and public-interest factors favor transfer. While Plaintiff asserts that the case should not be transferred, he fails to show how he would be inconvenienced at all and how the interests of justice favor retention.

**I. Taken together, the private-interest factors back transfer.**

Considering the private-interest factors—(1) the parties' forum preferences; (2) where the claim arose; and (3) party convenience, witness convenience, and access to proof—this case should be transferred.

**A. Mr. Chadwell's forum choice, unlike the Office's, deserves no deference.**

The choice-of-forum factors favor transfer to Texas. To challenge that proposition, Mr. Chadwell: (1) cites a general rule, while ignoring the relevant exception; (2) unsuccessfully tries to distinguish cases raised in the Motion to Transfer; and (3) attempts to link as many fragments of his allegations to Washington, D.C. as possible. None of these arguments carry weight.

First, Plaintiff cites several cases that stand for the unremarkable proposition that a plaintiff's choice of forum usually merits deference. *See* Opp'n at 6. The Office does not dispute that. *See* Def.'s Br. at 5. Rather, that general principle is inapplicable here because this case presents an exception to the general rule. ***Where transfer is sought to a plaintiff's home forum, this Court has repeatedly determined that the plaintiff's forum choice merits little—or***

***even no—deference.***  See Def.'s Br. at 5-6; *see also Claros v. Cowan*, No. 21-609 (JEB), 2021 WL 1820209, at *2 (D.D.C. May 6, 2021) ("Since, as just discussed, Plaintiffs receive no deference, and as the aforementioned other interests favor transfer, Defendants receive some deference for their choice of forum."); *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) (same).  Plaintiff fails to demonstrate why the plaintiff's-home-forum exception should not apply here.

Instead, Plaintiff attempts to establish that this case has "meaningful ties" to the District of Columbia.  However, in doing so, Plaintiff relies on *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24 (D.D.C. 2013), a case where the plaintiff's residence was never discussed, and the home-forum exception ***did not even apply***. See Def.'s Br. at 6. *See Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31-32 (D.D.C. 2013).  Plaintiff then quotes, "the deference normally given to a plaintiff's choice of forum is lessened when the plaintiff's forum choice lacks meaningful ties to the controversy and has no particular interest in the parties or subject matter," but conveniently omits the very next sentence: ***"The plaintiff's choice of forum is also conferred less deference by the court when [it] is not the plaintiff's home forum."***  *Spotts v. United* States, 562 F. Supp. 2d 46, 52 (D.D.C. 2008) (alterations in original) (internal quotation marks and citations omitted). Plaintiff's assertion that the home-forum exception is overcome by meaningful ties to the requested transferee forum bears no support, as not only do the cases Plaintiff introduces swing in favor of transfer, but as discussed in the Office's brief in support of its motion to transfer venue, there is an utter lack of meaningful ties to Washington, D.C. in this case compared to the ties to Texas.[2]  *See U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42,

---

[2] Plaintiff's caselaw support in his brief actually cut in favor of transfer, not retention.  In *Oudes v. Block*, 516 F. Supp. 13, 14-15 (D.D.C. 1981), the court found that given plaintiff's residence

3

47 (D.D.C. 2011) ("Where most of the relevant events occurred elsewhere, deference to the plaintiff's choice of forum is weakened.") (internal quotations marks, alterations, and citations omitted)).

Here, Plaintiff's allegations show that there is little relevant connection to Plaintiff's employment and Washington, D.C. Plaintiff was only employed in Washington, D.C. for five months, at the beginning of 2021. Plaintiff does not allege he ever returned to Washington, D.C. after May 2021. Instead, the remaining allegations relate expressly to his multi-year employment in Texas, with occasional phone calls that he received in Texas but that allegedly came from Washington, D.C. It is undisputed that Texas has "substantial ties" to the case. Texas is where Plaintiff lives (his home forum), it is where Plaintiff was employed, it is where the vast majority of events described in the Complaint allegedly occurred, and (perhaps most importantly) it is where Plaintiff's "work environment" was allegedly hostile. Therefore, Plaintiff's choice of forum should not carry any weight in this analysis.

Second, the Office's opening brief cites three of this Court's decisions for the proposition that a plaintiff's choice of forum is not entitled to any deference at all if the plaintiff does not file suit in his home forum. Opp'n at 5-6; *see also* Def.'s Br. at 7-8. Plaintiff unsuccessfully tackles these cases. In each case, *see Jimenez v. R&D Masonry, Inc.*, Civ. No. 15-1255 (JEB), 2015 WL

---

was in West Virginia, the responsible officials; relevant records; and individuals were in West Virginia, and that there would be "negligible inconvenience to the plaintiff," the plaintiff's choice of forum was not afforded deference. In *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996), the case bore a tenuous connection to the plaintiff's choice of forum, as the only meaningful tie to the District of Columbia was that one of the three plaintiffs resided in Arlington, Virginia. In contrast, Colorado, the proposed transferee forum in that case, had an overwhelming connection to the subject matter of the action, as the land and water affected by the suit and the interested parties were all located in Colorado. Thus, the plaintiff's choice of forum was negated.

7428533, at *3 (D.D.C. Nov. 20, 2015); *Claros,* 2021 WL 1820209, at *2; and *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018), the deciding court transferred the case to a venue where the plaintiffs resided, and each court held that the plaintiff's choice in venue was afforded little weight. While Mr. Chadwell tries to distinguish the facts of each case, that tactic misses the mark because it ignores the simple proposition that Defendant seeks to transfer venue ***to Plaintiff's home*** should negate any deference to Plaintiff's choice. Curiously, to try to distinguish each case as to this factor, Plaintiff argues about facts that are irrelevant to forum choice and, instead, relate to an entirely separate inquiry, the where-the-claim-arose factor. *See* Opp'n at 7. This is unpersuasive and should be analyzed in its own factor (as Defendant did in its initial Motion).

Third, Plaintiff asserts that the Court should afford no deference to the Office's choice of forum unless the Office "'establishes that the added convenience and justice of litigating in [its] chosen forum overcomes the deference ordinarily given to Plaintiff's choice.'" Opp'n at 8. That argument holds no water. To start, the case Plaintiff relies on for that quote is distinguishable because the plaintiff in *Douglas **did not even live*** in the proposed transferee forum, so the exception that applies here did not apply there. *See* Compl. ¶1; *Douglas v. Chariots for Hire*, No. 12-429 (JEB) (D.D.C. March 19, 2012), ECF No. 1 (complaint). *See generally Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24 (D.D.C. 2013). And, in any event, as discussed in the Office's opening brief and in this reply memorandum, transfer to the parties' and the witnesses' home forum does serve the interests of both convenience and justice. *See, e.g.*, Def.'s Br. at 8-11.

Fourth, Plaintiff is flatly wrong when he states that the Office resides only in the District of Columbia, and/or that the Office's ties to the District of Columbia are somehow more

substantial than are its ties to Texas. Opp'n at 9. That intimation is laughable.³ As explained in its opening brief, and in this one, the Office has significant ties to Texas. Indeed, Plaintiff attempts to weaponize the Office's Texas connections when baselessly accusing it of forum-shopping. *See* Opp'n at 19-20.

At bottom, the choice-of-forum factors support transfer to Texas, where all parties and most likely witnesses reside.

### B. Mr. Chadwell's claim arose in Texas.

It is hard to deny that Mr. Chadwell's claims arose in Texas. Still, he tries. On this issue, he primarily argues that a claim can only arise in "the location in which the decision that caused Plaintiff's harm" was made and, on that basis, that his claim arose in D.C. Opp'n at 10. Perhaps recognizing that that cannot be right, Plaintiff seems to alternatively argue that most of the significant events underlying his claims occurred in Washington, D.C. *See* Opp'n at 11. Plaintiff is wrong on both fronts.

---

³ So, too, is the Opposition's understanding of the purposes and functions of a Congressional office. It is generally true that the District of Columbia office of a Member of Congress is primarily focused on "debating and passing legislation." Opp'n at 9 (alleging that the Office "conducts its principal functions (i.e., legislating) in Washington, D.C."). But the "principal function" of a Member's district office(s)—where Plaintiff was employed as a Field Representative—is altogether different. District offices' primarily work to assist district-based residents with various constituent matters. *See* Decl. of Robert Schroeder ¶ 11-12, ECF No. 7-2. And it is well established that a Congressional office's non-legislative functions are just as significant as its legislative ones. *See United States v. Brewster*, 408 U.S. 501, 512 (1972) ("It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities . . . . These include a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress."). That Plaintiff fails to appreciate the critical and distinct role played by a Member's district office might be why his Opposition's related arguments are so far off-the-mark.

Reading Plaintiff's Opposition alone, one would assume this entire case arose from Plaintiff's short stint working in the Washington, D.C. office at the beginning of 2021, and then involved a few phone calls in the more-than two years afterwards.[4]  If one were to read Plaintiff's Opposition alone, it would be reasonable to assume that Plaintiff's D.C. based allegations are untimely—occurring more than two and one-half years  prior to  filing of the instant Complaint.[5]  Furthermore, if one were to read the Opposition alone, it would seem that Plaintiff has also failed to allege that a continuing violation exists because of the two-year separation between the early 2021 allegations relating to Plaintiff's Washington, D.C. work and the allegations that allegedly occurred from March 2023 through October 2023.

Plaintiff tries to have things both ways.  His Complaint alleges significant events occurring during the majority of Plaintiff's employment—in Texas.  *See* Compl., ECF No. 1 ¶¶ 22, 24-55.  However, his Opposition relies so heavily on the old and limited allegations that occurred in Washington, D.C. that one must raise the suspicion that Plaintiff's choice of venue is, in fact, the very forum shopping he now suspects of Defendant.  *See* Opp'n at 23.

Specifically, Plaintiff's Opposition skips the fact his Complaint alleges:

- That the "hostile work environment against Plaintiff continued while Plaintiff was employed as a Field Representative in the Richmond and Fulshear Texas offices." Compl. ¶ 28.

---

[4] As noted in Defendant's Answer, Defendant denies these comments were made.  *See* Def. Answer ¶ 52.  For purposes of this motion, Defendant simply points out that Plaintiff has failed to state Mr. Schroeder's location for each of these alleged statements.

[5] If this were a case about Plaintiff's employment in Washington, D.C., it would have had to have been brought within 180 days of his employment there—or by approximately November 2021.

- That Texas staffer Thomas Goodfellow allegedly engaged in harassing behavior only in Texas. Compl. ¶¶ 27, 31.

- That a local *Texas* elected official who was gay allegedly sought an endorsement from the Congressman. Compl. ¶ 33.

- That another Texas employee allegedly was tasked to find out Plaintiff's sexual orientation over a year after Plaintiff had left Washington, D.C. and moved to Texas. Compl. ¶¶ 34-35.

- That Representative Nehls allegedly stopped reaching out to Plaintiff regarding his work one and a half years after Plaintiff had left Washington, D.C. Compl. ¶ 36.

- That Rep. Nehls' wife also allegedly stopped interacting with Plaintiff *and his family* during social gatherings in Texas. Compl. ¶ 37

- That Defendant allegedly restricted Plaintiff from attending trainings and events in Texas. Compl. ¶ 38.

- That, in the Fall of 2022, more than a year after Plaintiff left Washington, D.C., Defendant allegedly cut Plaintiff off from carrying out many of his regular job duties, including "accompanying Representative Nehls on trips and functions *within the District*, duties Plaintiff had regularly performed prior to the Fall of 2022." Compl. ¶ 39

- That the Office hired a new Field Representative in Texas. Compl. ¶ 40

- That the new Field Representative attended events and trainings instead of Plaintiff. Compl. ¶ 41.

- That Plaintiff was allegedly passed over for a promotion to the District Director position *in Texas*. Compl. ¶ 42.

- That Plaintiff was allegedly told he had no growth potential in the office and should explore other opportunities in Texas. Compl. ¶ 43.

- That Plaintiff accepted another job *in Texas*. Compl. ¶ 49.

In an attempt to downplay the significance of the events alleged to have occurred in Texas, Plaintiff's Opposition raises a red herring—that the location of the manager on the phone matters here. Plaintiff cites several cases to try to support his proposition, but none are relevant. *See* Opp'n at 11-13. Each case cited by Plaintiff involves the issue of **personal jurisdiction**, not venue.[6] As such, none are on point to the analysis here. No amount of legal shell-games can hide the fact that this case is about Mr. Chadwell's work environment, and that workplace was in Texas.

Finally, Plaintiff attempts to distinguish this case from *Pope v. Off. of Congressman Lamborn*, No. 21-1321 (JEB), 2021 WL 4192029 (D.D.C. Sept. 15, 2021), but again confuses the analysis of venue with personal jurisdiction. *See* Opp'n at 14. Defendant is not arguing the extent to which this Court or the transferee court has personal jurisdiction over any party or witness—it is raising a question of venue. The *Pope* case involved allegations of retaliation and

---

[6] Plaintiff's citations to case law on this point are also unhelpful. Rather than focusing on venue, Plaintiff cites cases relating to personal jurisdiction. *See* Opp'n at 11-12 (citing *Margoles v. Johns*, 483 F.2d 1212 (D.C. Cir. 1973) (analyzing personal jurisdiction for slander); *Tavoulareas v. Comnas*, 720 F.2d 192 (D.C. Cir. 1983) (analyzing personal jurisdiction for slander and libel); *Helmer v. Doletskaya*, 393 F.3d 201 (D.C. Cir. 2004) (determining personal jurisdiction, not venue, for breach of contract with a Russian citizen); *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990) (analyzing personal jurisdiction for corporations and not venue)).

harassment regarding the plaintiff's work environment in Colorado.[7] Similarly, this case involves allegations regarding harassment dealing with Plaintiff's work environment in Texas. As the Court held in *Pope*, the claim arose in the place where the plaintiff was employed, and the Court should transfer venue there. *See* 2021 WL 4192029, at *3.

### C. Texas is more convenient and offers greater ease of access to proof.

Defendant's Motion demonstrated that this case should be transferred for the convenience of the parties, for witness convenience, and for ease of access to proof. *See generally* Def.'s Br. at 8-11. Mr. Chadwell does not argue that litigating in his home forum would be less convenient than litigating in this one, nor could he argue that credibly. Mr. Chadwell also does not argue that proceeding in Texas would be less convenient for his witnesses. Instead, he focuses his entire attention on the convenience of one witness—Mr. Schroeder. However, as indicated earlier, Mr. Schroeder is willing to travel to Texas for purposes of this litigation, just as he regularly travels to Texas with Congressman Nehls for work.

Furthermore, despite Plaintiff's assertion, Mr. Schroeder, as the Chief of Staff of the Office, would be bound by subpoenas to appear in Texas. *See e.g.* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition … (B) ***within the state*** where the person resides, ***is employed, or regularly transacts business in person***, if the person (i) ***is a party or a party's officer***; or (ii) is commanded to attend a trial and would not incur substantial expense.") (emphasis added). As this Court has explained:

> It is true that Rule 45(c)(3)(A)(ii) does not protect a party witness from having to travel more than 100 miles—or even all the way across the country—for trial. A party witness

---

[7] Curiously, the *Pope* case was litigated by the same counsel, attempting to make the same arguments that a congressional staffer employed in a district office should litigate his case in Washington, D.C. because some phone call originated in D.C. Just as the *Pope* Court held, this case should be transferred to the district where the employee was employed, not where phone calls originated.

>who is *properly served* with a trial subpoena is not entitled to have that subpoena quashed on the ground that it requires long-distance travel, unless such travel would amount to an undue burden or one of the other bases for quashing a subpoena under Rule 45(c)(3)(A).

*Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 62 (D.D.C. 2010) (emphasis in original).

Plaintiff offers no explanation as to why Rule 45 would not bind Mr. Schroeder to appear at a trial in Texas. In fact, Plaintiff makes the point for Defendant by going to great lengths in his Opposition to state Mr. Schroeder's authority in the office as the Chief of Staff—thereby demonstrating that he is an officer and would be bound to appear in Texas if subpoenaed.

Plaintiff also seems to concede that litigating this case in Washington, D.C. would create significant inconvenience for most witnesses when he suggests that all of the Texas-based witnesses should have video depositions and further suggests this court should rely on videotaped depositions *for trial*. *See* Opp'n at 19. This proposal is clearly flawed, given that all potential witnesses cited in Plaintiff's own Complaint would likely be available for live testimony in Texas, both for deposition and trial. Why should the parties and the Court deprive themselves of the benefit of live testimony, when it does not have to and could be remedied simply by transferring this case to where the actions these witnesses allegedly witnessed occurred and where they reside? Plaintiff's arguments are simply unconvincing and illogical on this point.

Perhaps indicating a true motivation in trying to litigate this case in Washington, D.C., Plaintiff's "convenience" argument instead relates to the convenience of counsel. *See* Opp'n at 15-17. However, Plaintiff correctly points out that this Court's precedent holds that the location

of counsel is "either not a consideration, or irrelevant." Opp'n at 15 n3. The Court should continue to hold that the location of counsel is not a consideration and is irrelevant here.[8]

### D. In short, the private-interest factors bolster the case for transfer.

The private-interest factors favor transfer. Since the proposed transferee forum is home to all parties and most (potentially all) likely witnesses, Mr. Chadwell's forum choice merits no deference. But the Office's preference does. And Mr. Chadwell's claim arose in Texas—where he lives and where he worked for the Office. Most importantly, litigating at home in Texas would be more convenient for the parties and witnesses. Mr. Chadwell does not dispute that. Plus, being in Texas would better ensure that both sides can compel crucial in-person testimony at trial. He fails to dispute that fact as well.

## II. On the whole, the public-interest factors also back transfer.

Based on the public-interest factors—(1) familiarity with the law, (2) court congestion, (3) local interest in resolving controversies at home, and (4) forum-shopping—this case should proceed in Texas.

### A. Both courts can ably adjudicate Mr. Chadwell's federal claim.

Familiarity with the law favors neither transfer nor retention and Plaintiff concedes this point. Presuming that all federal courts can resolve federal claims, this Court has repeatedly found that this factor is neutral when, like here, the plaintiff brings only a federal cause of action.

---

[8] Plaintiff alludes to the possibility of forum shopping. However, his arguments seem to be projecting his own attempt to litigate 1,400 miles away from where he was employed. The same question could be posed to Plaintiff regarding *his* choice of forum. Defendant's motion simply seeks to litigate this matter where virtually all the witnesses and evidence are located, and where Plaintiff's alleged hostile work environment existed. Defendant should be entitled to access to this proof fully and without having to rely on video deposition substitutes for live testimony. Plaintiff, on the other hand, has chosen a location to litigate that is almost as far from access to proof as possible.

Def.'s Br. at 11. Mr. Chadwell concedes that "[b]oth United States District Courts are perfectly capable of effectively adjudicating this civil action." Opp'n at 20. He even "agrees that this factor does not strongly favor either side." Opp'n at 20. Yet, he hints that this Court can more ably resolve his sole claim—hostile work environment under the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq*. That intimation is specious, and that view should be rejected.

Contrary to Plaintiff suggestion, the CAA is not some mysterious beast that courts in the District of Columbia Circuit are uniquely armed to slay. The CAA makes applicable, to Congressional employers, various federal laws that have long governed employment in the private and public sectors. 2 U.S.C. § 1302(a). Those laws include a number of labor and employment statutes with which the federal district courts throughout the country have familiarity. They include Title VII of the Civil Rights Act of 1964—the underlying cause of action at issue in this case. *Id*. § 1302(a)(2). Surely cases brought under Title VII occupy significant space on both courts' dockets. Not surprisingly then, Claims brought under the CAA are analyzed under Title VII's familiar framework and standards. *See, e.g., Moore v. Off. of the Architect of the Capitol*, 828 F. Supp. 2d 254, 257 n. 1 (D.D.C. 2011); *Moran v. U.S. Capitol Police Bd*., 820 F. Supp. 2d 48, 56 (D.D.C. 2011); *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 97 (D.D.C. 2011); *Timmons v. U.S. Capitol Police Bd*., 407 F. Supp. 2d 8, 11 (D.D.C. 2005); *Trawick v. Hantman*, 151 F. Supp. 2d 54, 62–63 (D.D.C. 2001), *aff'd*, No. 01-5309, 2002 WL 449777 (D.C. Cir. Feb. 21, 2002). Without a doubt, the Southern District of Texas has handled countless Title VII matters. Mr. Chadwell's CAA claim will not confound that court.

### B. Neither court is clearly more congested than the other.

The parties agree that this factor does not provide much help in determining whether to transfer.

### C. Texas has a local interest in resolving this controversy at home.

Texas has a superior local interest in this controversy, and that fact tips the scales towards transfer's way. That interest stems from Mr. Chadwell's residency in Texas, that his employment was in Texas for six-times longer (and was far more recent) than his Washington, D.C. employment, the Office's significant ties to Texas, the fact that most operative events occurred there, and Texas being the place where this case's effects will be experienced most keenly. Def.'s Br. at 13-15. Remarkably, Mr. Chadwell does not deny Texas's sizeable local interest. Instead, he primarily (1) attaches outsized import to this district's interest in employment-related actions purportedly made here and (2) advances a myopic view of operative events, conveniently skipping over Texas's role in all of them. Opp'n at 21-23. And he does not even endeavor to engage with the effects issue. In any event, there is no getting around how much larger Texas looms in the real, and alleged, events at play.

Plaintiff again tries to distinguish this case from that of *Pope*, where the Court transferred the case from Washington, D.C. to Colorado. His attempts fail again here. Plaintiff claims that because the plaintiff in *Pope* never worked in Washington, D.C., this case is different. However, this case, like that in *Pope*, involves the workplace in the congressional district, not in the Capitol. Here too, the work environment at issue was in the Congressional district, not the Capitol. Like in *Pope,* "The gravamen of this case—the employment practices of a Colorado politician who employs Colorado residents in his office in Colorado—paradigmatically implicates local interests." 2021 WL 4192029, at *4. The Court further explains that because

14

Members of Congress represent local constituents, "[t]hose constituents have a strong local interest in how their Congressman operates his District Office and handles disputes with his Colorado-based employees." *Id.*

The Plaintiff in *Pope*, like Mr. Chadwell, could not overcome the obvious. "Although [the Congressman] spends time at the Capitol and may employ some D.C. residents, the facts at issue in this case do not revolve around his office's employment practices here. Nor does he represent the people of Washington. At the end of the day, this factor lands decisively in the transfer column." *Pope*, 2021 WL 4192029 at *5; *see also* Def.'s Br. at 13-14.

As Judge Boasberg determined in *Pope*, this Court should also find that this factor lands decisively in the transfer column.

### D. Mr. Chadwell may be trying to forum-shop.

Retention—not transfer—would reward efforts to forum-shop here. When accusing the Office of forum-shopping, Mr. Chadwell seems to be projecting. He lives in Texas and worked in the Texas Office six times longer than he worked in Washington, D.C.—and far more recently. In fact, most likely witnesses reside in Texas. Yes, Rep. Nehls and Chief of Staff Schroeder divide their working time between Texas and Washington, D.C. No one disputes that. But Rep. Nehls resides in Texas, and Chief of Staff Schroeder travels to Texas regularly and would do so for this case. Mr. Chadwell cannot refute that. Even if the District of Columbia were more convenient for them (it is not), certainly Mr. Chadwell has another motive. So why does he want to be in the District of Columbia, 1,400 miles away from home? Conspicuously, Mr. Chadwell is silent as to how litigating in Texas would disadvantage him, other than the false assertion that he could not subpoena Mr. Schroeder. Nor has he revealed what he hopes to gain by staying in this district. In contrast, the Office has explained its view that transfer would

benefit it, and, for that matter, Mr. Chadwell—because all parties and almost all (if not all) likely witnesses reside there. *See generally* Def.'s Br. at 1-3, 6-11.

On a related note, in its opening brief the Office discussed some of its ties to Texas. Def.'s Br. at 14. It is suspect that Mr. Chadwell thinks that the parties' Texas connections "have no relevance whatsoever to the legitimate factors to be considered in a transfer motion." Opp'n at 23. They do. Those ties bear directly on the local interest in resolving controversies at home, a factor that both sides agree courts weigh when deciding whether to transfer. *See* Def.'s Br. at 13-15; Opp'n at 21-23; *see also Pope*, 2021 WL 4192029, at *4-5. The Office merely shows how Texas's local interest is superior to the District of Columbia's here. Ironically, the very factors Mr. Chadwell asserts show forum shopping are the very same factors that demonstrate how superior Texas's local interest is than Washington, D.C.'s. *Accord Pope,* 2021 WL 4192029, at *4-5. Each of these alleged forum shopping factors points squarely in favor of transfer.

In any event, forum-shopping considerations favor transfer.

**E.  Viewed together, the public-interest factors also bolster the case for transfer.**

Given the public-interest factors, this matter ought to go to Texas. Most significantly, Texas has a superior local interest in resolving a Texas resident's claim about his Texas-based workplace. As well, with transfer benefitting both sides, and posing no downside to which Mr. Chadwell will admit, retention would likely facilitate forum-shopping by Mr. Chadwell. Why else would he want this case to carry on some 1,400 miles from where the parties and witnesses reside? Finally, neither relative familiarity with the law nor relative congestion justify keeping this Texas case in Washington, D.C.

## **CONCLUSION**

This case can, and should, be litigated in Texas. It can be litigated there because venue lies in that forum. In light of the applicable private- and public-interest factors—none of which favors retention—this dispute should be litigated in the U.S. District Court for the Southern District of Texas – Houston Division, for convenience considerations and in the interest of justice. Based on these reasons and those set forth above, the Office's motion to transfer should be granted.

Respectfully submitted by,

DEFENDANT OFFICE OF
CONGRESSMAN TROY NEHLS

By:  /s/ Joel J. Borovsky
Joel J. Borovsky, D.C. Bar #974812
Ritika Rajappa, D.C. Bar #90014734
Russell H. Gore, D.C. Bar # 449231
U.S. House of Representatives
Office of House Employment Counsel
4300 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-7075
Joel.Borovsky@mail.house.gov
Ritika.Rajappa@mail.house.gov
Russell.Gore@mail.house.gov

*Defendant's Counsel*

Date:    November 15, 2024